JEFFERSON COUNTY *v.* KATE W. GRAFTON ET AL.

1. COUNTY. *Title to land. Grantees of county. Estoppel.*

Purchasers claiming title to land under a deed from a county, cannot, in a suit by the county to cancel their deed, defend on the ground that the county was at the time of its purchase without power to acquire the property.

2. SAME. *Power to sell land.*

A county is not a municipal corporation proper, and, before § 304, code 1892, became operative, was not authorized to sell land, though the same was not applied to a public use.

3. SAME. *Board of supervisors.*

A board of supervisors is not bound by the acts of its predecessors, unless such acts were within the scope of their authority.

FROM the chancery court of Jefferson county.

HON. O. S. ROBBINS, Special Chancellor.

The facts are stated in the opinion of the court.

*Wiley N. Nash*, attorney-general, and *Jeff Truly*, for appellant.

In a suit like the one at bar, the grantee is estopped from denying the validity of the title conveyed by the deed whereunder he took possession of the land. *Cowell* v. *Springs Company*, 100 U. S., 55; *Cromwell* v. *Craft*, 47 Miss., 44; *Wade* v. *Thompson*, 52 *Ib.*, 367; *Clemens* v. *Meyer*, 44 La. Ann., 390.

The deed to the board of supervisors, in 1874, vested in the county of Jefferson title as against the world, subject only to the right of the state to object. Their power can be questioned from no other source. *Quitman County* v. *Stritze*, 70 Miss., 320. Boards of supervisors may, by law, acquire real estate for certain purposes, and, having such capacity, conveyances to

them are not void, but voidable only. The sovereign alone can object. 4 Am. & Eng. Enc. L., 433, and cases cited thereunder; *Natoma Water & Mining Co.* v. *Clarkin*, 14 Cal., p. 552; *Hough* v. *Land Company*, 73 Ill., 23.

Did the orders and instruments passed and executed by the board of supervisors divest the county of Jefferson of its title to the property in controversy? We maintain that this question should be decided in the negative, and for two reasons: (1) Incapacity of grantees, (2) lack of power in grantors to convey. Submitting to the court for determination, without argument, the question (which we think open to grave doubt), whether the self-styled trustee ever had the legal capacity to hold title to real estate, even under the first so-called conveyance of the board of supervisors, we do earnestly contend and insist that any powers they may have had were revoked and annulled by the order of the Presbytery of Mississippi, dated April 5, 1884, forming a part of exhibit F to the bill of complaint, by which the presbytery declined to accept the property subject to the conditions imposed, and directed the trustee to convey any title held by said presbytery, provided the grantees accepted the conditions—that is, established and maintained a first-class white female school on the premises. Granting that they, as trustees, and the association which they claimed to represent were capacitated to receive title to real estate, these powers were finally ended and revoked by the refusal of the association to accede to the conditions imposed by the first conveyance of the board of supervisors.

Have boards of supervisors the power to make donations of county property to private persons or for private purposes? Clearly, boards of supervisors have no authority to either sell or give away property of the county, unless especially authorized by an enabling act, or by some definite expression of legislative will. *Howe* v. *State*, 53 Miss., 69, 70; *Supervisors of Jefferson County* v. *Arrighi*, 54 Miss., 668 and cases cited. See, also, 50 Miss., 737; 73 N. C., 255.

Recognizing the fact that boards of supervisors were without authority to sell or dispose of the property of their respective counties, even where the property had ceased to be of use to the county, and when they could dispose of it on advantageous terms, the legislature passed a law empowering boards of supervisors " to sell and convey " county property (real estate) when "it shall cease to be used for county purposes." Annotated code, 1892, § 304. Unless the legislature was at fault, unless the learned code commissioners erred, boards of supervisors did not have this power prior to the passage of the law above quoted.

*S. C. Coffey*, for appellees.

Under §§ 500 and 501 of the annotated code of Mississippi, before clouds upon title can be canceled or removed, and the title be confirmed in complainant, it is incumbent upon him to show entire fairness of his own, and, further, he must show that he is possessed of a perfect legal or a perfect equitable title; the mere fact that he might show the invalidity of his adversary's will not suffice. *Boyd* v. *Thornton*, 13 Smed. & M., 338; *Toulmin* v. *Heidleberg*, 32 Miss., 268; *Handy* v. *Noonan*, 51 Miss., 166; *Griffin* v. *Harrison*, 52 Miss., 824. And complainant's bill must make full deraignment of its title—that is, he must prove or justify his title, otherwise his bill is demurrable. We submit that, in this controversy, complainant's bill absolutely fails to show either a legal or an equitable title such as should enable it to remove clouds and confirm title in itself.

A county may be defined as a sub-political division of a state, deriving its powers to purchase and hold real estate by legislative enactment. Property of this nature, purchased otherwise than in the manner specified by statute, vests no title in the county, and could have no other effect than to subject the officers purchasing the same, or rather the officer who held the funds belonging to the county, liable for the misappropriation of its moneys.

The code of 1871 did not, nor the acts amendatory thereto, nor any special act of the legislature prior to the date of the purchase, authorize or empower the board of supervisors to invest the county moneys in lands. Said purchase being unauthorized by law, could in nowise vest title in complainant.

The second ground of demurrer urged against the bill is that it shows upon its face that whatever title complainant may have had to the property, was duly and regularly parted with, as shown in exhibits "B" and "C."

The entire bill does not comply with the requirements of the statute, so as to enable complainant to assert title in itself, nor to remove clouds upon the same. First, it fails to show any title to the controverted land; second, if complainant ever had title, it parted with it for a valuable and lawful consideration, and that the conditions of said purchase and the price paid to and received by complainant, was sufficient in law to pass title, and did pass title, to the purchaser thereof.

*E. S. & J. T. Drake*, on the same side.

We have the extraordinary spectacle of a complainant coming into a chancery court and showing by its own allegations that it has parted with all right, title, and interest to a piece of real estate, by deeds properly executed, two in number, and by resolutions of the corporate body duly passed and entered on the minutes; that it has sat quietly by for twelve long years and seen the title to this property pass, for valuable consideration, from vendee to subvendee and sub-subvendee, and then, after setting out all these facts, asking the court to cancel its own solemn deeds, and the deeds of its vendee and the subvendee, as clouds upon its title! A statement of the facts set out in the bill ought to be sufficient brief. The facts suggest a demurrer.

Section 304 of the code of 1892 was merely declaratory of what was already well established law. "The right to dispose of property, not held for public use, is inherent in all corpora-

tions, public or private, unless withheld by the law under which they are organized.    And sales made by a municipal corporation, or board of supervisors, in the exercise of its discretionary power, cannot be annulled because improvident.''    14 Am. & Eng. Enc. L., 1063, text; 4 *Ib.*, 378, text and notes, and 382, note 2; 15 Am. & Eng. Enc. L., p. 1063; 4 *Ib.*, 378, text and note; 4 *Ib.*, 382, note.    And one board of supervisors is bound by the acts of its predecessors.    4 Am. & Eng. Enc. L., 375, and note.

It seems manifest from the record that the purchase of this property by the board of supervisors in 1874 was without authority of law and *ultra vires.*    The record is silent as to the object of the purchase.    But it is certain that it was either a purely speculative venture, or else it was bought with a view to establish a college.    The board was not authorized to make the purchase for either purpose.

WHITFIELD, J., delivered the opinion of the court.

The averments of the bill, so far as material to the solution of this case, may be thus condensed: That the county of Jefferson bought, for $4,000, on November 17, 1874, of Gilchrist, administrator, under a decree of the chancery court, a tract of land on which were the buildings constituting the Fayette Female Academy; that on September 4, 1883, the board of supervisors undertook to sell and convey said land to certain parties, purporting to be the trustees of the Presbytery of Mississippi, for $100, upon the express condition, set out in the order of the board and the deed, that the presbytery should '' establish and maintain a first-class white female school on said premises, within ten years from the date of confirmation of said sale,'' and that, if said presbytery should fail so to do, then '' all of said property should revert to Jefferson county;'' that on May 25, 1885, a new board of supervisors recited that the conditions had been complied with, in an order on their minutes, and directed an unconditional deed to be made to said

board of trustees of said presbytery, which was made on May 28, 1885, said deed further reciting that it was given in "full confirmation of the deed of September 4, 1883;" that on April 5, 1884, said presbytery passed an order providing that, in the event the board of supervisors failed to secure the State Industrial School, the board of trustees of the Fayette Female Academy should convey the land to Rev. D. A. Planck, upon his assuming all the obligations imposed by the original contract, and promising the "support and encouragement of said presbytery" when the school "should" become worthy of their interest; that on August 29, 1885, Rev. P. S. Shaw, president of the board of trustees of the Fayette Female Academy, executed a deed of the land for $100, to said D. A. Planck, said deed reciting that it was executed in pursuance of the "authorization and qualification" set forth in the aforesaid order of presbytery of April 5, 1884; that afterwards said D. A. Planck and wife conveyed said land to appellee, Miss Kate Wharton (now Grafton), for $1,000 cash; that Miss Kate Wharton (now Grafton) afterwards conveyed one acre of the land to Mrs. Catherine Doyle, and the balance to Mrs. Bell B. Harper, for the considerations therein named; that the consideration of $100 in the deed from the board of supervisors to said presbytery was so grossly inadequate as to make the deed amount to a pure donation of public property to private individuals; and, finally, that the conditions set out in said deed were never complied with, but violated; that there was not established and maintained on said premises, "within ten years of the date of the attempted confirmation of said pretended sale, a first-class white female school;" and that, hence, all said property had reverted to Jefferson county. And, with the bill, complainant tendered the $100 received by the county on the alleged sale to said presbytery. Respondent's demurrer admitted all the facts well pleaded in these averments, and the demurrer was sustained.

It is first insisted by appellees that the county had no power

to buy this land.    Appellees went in under the county's title, and it is not for them to say the county had no power to buy. That is a matter of which the state alone could complain.    *Quitman Co.* v. *Stritze,* 70 Miss., 320; *Hough* v. *Land Co.,* 73 Ill., 28; *Mining Co.* v. *Clarkin,* 14 Cal., 544; *Cowell* v. *Springs Co.,* 100 U. S., 60; 15 Am. & Eng. Enc. L., 1062.

Appellees next insist that municipal corporations have, generally, the power to dispose of property not held for public use, as an inherent power belonging to such corporations (citing 15 Am. & Eng. Enc. L., 1063); but, as stated expressly therein, even municipal corporations proper have no such power when it is withheld by the law under which they are organized, and a county is not a municipal corporation proper.

It is next insisted by appellees that sales made by municipal corporations cannot be annulled because improvidently made, citing the same authority.    But it is expressly therein stated that this is true only where the corporation has the power to sell, and the question here presented is one of power to sell at all this property.

It is next urged by appellees that one board of supervisors is bound by the acts of its predecessors.    But the authority cited, correctly shows that this is true only where the acts of "their predecessors were within the scope of their authority." 4 Am. & Eng. Enc. L., 375.

This brings us to the vital question in the case.    Did the board of supervisors have, under the law as it then stood (the code of 1880, § 2144), the power to make the sale to the presbytery of this property?    That section, after enumerating various powers, provides that the board " shall have such further powers as are, or shall be, conferred upon them by law."    It is of significant aid in determining this question that not until § 304, of the code of 1892, was adopted, was there any provision made, as is therein made, that " in case any of the real estate belonging to the county shall cease to be used for county purposes, the board of supervisors may sell and convey the same,

on such terms as the board may elect.'' Counsel for appellees
contend that this section is merely declaratory of what the law
was without it. But it is well said, in 4 Am. & Eng. Enc. L.,
p. 375, that, '' being creatures of statute, endowed only with
special powers, and created for special purposes, they can exer-
cise only such powers as are expressly conferred by statute,
or which are necessarily implied.'' And, again, at page 379,
that their powers will, of course, vary in different states, ac-
cording to the differing grants of powers to them in such states.
And the course of judicial decision in this state holds them to
the strictest limitations of their powers. As clearly put, in
*Howe* v. *State*, 53 Miss., 69: '' It matters not whether its ac-
tion : . . be regarded as judicial, legislative, or ministe-
rial. Excess of authority in either capacity is simply void.
. . . They can do valid acts only as empowered by law.''
It was held in *West Carroll* v. *Gaddis*, 34 La. Ann., 928, that
'' property donated to a parish, in fee simple, for its use and
benefit, and upon which a courthouse was built and used, cannot
be legally sold under a police jury ordinance, although, the
parish seat being changed, the building was abandoned, and
threatened going to ruin; that such sale, having been made
without legislative authority, is a nullity, and conveyed no
title; and that, in such case, the defendants are entitled to
reimbursement of the purchase money, as a condition prece-
dent to the recovery of possession of the land by the plaintiff.''
This case is directly in point, and decisive of this controversy.
The opinion of the court, by Bermudez, C. J., is so felici-
tously clear and accurate that we quote—to adopt—the follow-
ing, as applicable to our boards of supervisors: '' Parishes, like
counties in other states, are involuntary political or civil divis-
ions of the state, designed to aid in the administration of gov-
ernment, as state auxiliaries or functionaries, possessing no
other powers than those delegated, ranking low down in the
scale of corporate existence, and well distinguishable from mu-
nicipal corporations proper, which are invested with more ex-

tensive powers, and endowed with more important functions, and a larger measure of corporate life. As a rule, they cannot acquire real estate unless for public utility, and cannot dispose of the same after it has been acquired and devoted to public service without legislative authority. They may, however, be objects of public or private bounty, in the absence of disabling or restraining statutes. They do not acquire for themselves as a political organization. They acquire for the benefit of the public—the people—particularly the local community, which is represented primarily by the state and secondarily by them, but so far only as the state has delegated to them the power to do so. As state auxiliaries, they cannot dispose of public property, unless with formal sanction of the state, and even then in those cases only in which the state, violating no trust and no contract, and infringing the rights of no one, could herself legally act. Creatures they are wholly dependent upon and controlled by their creator. They have no life, no attribute, no power, no rights, no obligation, but such as have been conferred or imposed on them.''

The court clearly shows (at page 933) the distinction between the powers of *quasi* corporations, like boards of supervisors and municipal corporations proper, in the disposition of property. To the same effect, strongly emphasizing the doctrine, are *Com.* v. *Rush*, 14 Pa. St., 186; *City of Alton* v. *Illinois Transp. Co.*, 52 Am. Dec., 479, and notes at pages 486, 487.

We are clearly of the opinion, therefore, that the deed of the board of supervisors to the board of trustees of the presbytery, of date September 4, 1883, and the similar deed, between same parties, of date May 28, 1885, and all the other deeds set out in the bill of complaint, are null and void, and, as such, should be canceled as clouds upon the title of the county; and, the complainants having tendered with their bill the $100 purchase money received by the county—

*The decree is reversed, the demurrer overruled, and the cause remanded.*