AMERICAN OIL CO. *v.* MARION COUNTY.

(Division B. Nov. 27, 1939. Suggestion of Error Overruled Jan. 8, 1940.)

[292 So. 296. No. 33901.]

Hannah, **Simrall** & **Foote**, of Hattiesburg, for appellant.

150

**C. V. Hathorn** and **Hall & Hall,** all of Columbia, for appellee.

Argued orally by **T. C. Hannah**, for appellant, and by **Lee D. Hall** and **C. V. Hathorn**, for the appellee.

**McGowen, J.**, delivered the opinion of the court.

The appellee, Marion County, by its board of supervisors, filed a bill to cancel a lease executed by the president of a predecessor board of supervisors in favor of Robertson, which lease, by assignments, had been acquired by the appellant, the American Oil Company; and for years the place leased had been used by it as a filling station—a lot of ground alleged to be a triangular strip of about thirty or forty feet.

The main allegation of the bill was that the predecessor board was without power to lease any part of the courthouse grounds, and that the lease was void. It was further alleged, however, that the operation of the filling

station was conducive to noises and disturbed the business to be conducted in the courthouse to some extent.

The answer of the appellant, in effect, admitted that the strip of ground leased by it had belonged to the county as a lot set apart for courthouse purposes; denied that the predecessor board was without authority to authorize its president to execute the lease sought to be cancelled; but it averred that the board of supervisors had been granted that power by the Legislature. It further set up the defense that the Board of Supervisors of Marion County had for a long time construed the statute to mean that it, the board of supervisors, had such power, and therefore this construction should control the court in upholding the validity of the lease. It still further alleged as a defense that the boards of supervisors were estopped by their action in dealing with the courthouse lands, from asserting any right to cancel the lease here in question.

We deem it unnecessary to detail at length the facts, as the evidence took a wide range due to the defenses interposed.

About one hundred years ago, Marion County, upon its being organized as such, acquired land for court house purposes which was about 330 feet wide East and West by 340 feet from North to South, and a courthouse and jail were erected thereon about or near the center of said lot of land, leaving surplus ground in either direction. Years ago, there was a fence around the courthouse. The place where the fence was erected is now marked by a concrete coping. A considerable portion of the lot was left outside of the coping, and has been used by the public indiscriminately for paths, travel-ways and the like. In the old days, it was used for the parking of livestock and conveyances, and in these latter days for the parking of automobiles. The lease here in controversy was made by order of the board of supervisors in 1923. A railroad switch-track was built upon a portion of the lot, and a taxicab stand used a part of it for a

parking space. Formerly, a lease had been executed by a board of supervisors to another party.

On September 5, 1923, Lewis, president of the board of supervisors, executed the lease contract mentioned herein which provided for a rental of $60 a year, and was for a term of twenty-five years from the 1st day of October, 1923. The American Oil Company of Mississippi acquired the lease from Robertson within a short time and transferred its contract to the American Oil Company of Ohio. In 1924 or 1925, the Interstate Wholesale Grocers petitioned the board of supervisors for permission to file an injunction against the appellant from erecting the filling station on the courthouse grounds. That bill challenged the validity of the lease. The case was tried and the decree was favorable to the Interstate Wholesale Grocers, and was appealed to this Court. See American Oil Company et al. v. Interstate Wholesale Grocers, Inc., 138 Miss. 801, 104 So. 70. This Court held that a private citizen, the taxpayer in this case, had no authority to bring such suit.

Subsequently, in 1926 or 1927, the board of supervisors filed a bill to cancel this lease and another which had been executed theretofore, and within a very short time ordered the suits dismissed.

Upon the hearing of the case at bar, the court below entered its decree sustaining the allegations of the bill and cancelled the lease, and the American Oil Company prosecutes its appeal to this Court.

On this appeal, the appellant presents three questions: (1) By virtue of Section 216 of the Code of 1930, the board of supervisors had the power to execute the lease here involved; (2) the board of supervisors is bound by its construction of said section even though the court should now conclude that a different construction should be placed upon the statute; and (3) by virtual abandonment of a large part of the lot, and its act, with reference to leasing parts thereof and permitting other parts to be indiscriminately used, constitutes an equitable estoppel

for the board to now assert any rights to the lease contract involved.

Section 216 is as follows: "May sell the real estate of the county.—In case any of the real estate belonging to the county shall cease to be used for county purposes, the board of supervisors may sell and convey the same on such terms as the board may elect, and in case of a sale on a credit, the county shall have a lien on the same for the purhase-money, as against all persons, until paid and may enforce the lien as in such cases provided by law. The deed of conveyance in such cases shall be executed in the name of the county by the president of the board of supervisors, pursuant to an order of the board entered on its minutes."

At the threshold of this case, a very serious question presents itself as to whether or not, by the negligence or affirmative action of the board of supervisors, it may, by negligence or affirmative act, cease to use that part of the lands originally acquired for courthouse purposes unless and until the use of the courthouse property by the public on that lot of land shall have been terminated, as, for instance, when, in the judgment of those empowered to manage the courthouse property, it (the board of supervisors) decides to remove the court house to another lot and ceases to use the original lot for county purposes, i. e. courthouse purposes. It was the conception of those who established the state government that the public was entitled to have a place for hitching their teams, whether it be mules, horses or oxen, and for parking their wagons or buggies, so that they could conveniently transact business or visit the courthouse for any lawful purpose. The fact that the modern automobile has been substituted for the horse and buggy does not change the original purpose for which the court house land was acquired. This is a grave question in this case but seems not to be specifically raised by counsel and therefore is not decided.

(1) We are of the opinion that the power conferred

on the board of supervisors to sell and convey the real estate belonging to the county for courthouse purposes did not embrace the power to lease it for a term of years. We think the statute is plain, unequivocal, and, by its terms, is not subject to the construction contended for here by the appellant. Much emphasis is placed upon the word "convey" in this statute, and the argument is to the effect that in that word is included the word "lease" as a method of conveyance. It certainly was not the intention of the Legislature to invest the board of supervisors with the power to finally limit the use of the courthouse by the public to the building itself which could be done by a number of leases. The position of counsel, carried to its logical ultimate conclusion, would mean that the statute authorizes the board of supervisors, by its nonuser, to lease all the lands adjacent to and a part of the courthouse lot as it deemed necessary.

Section 1394 of the Code provides that "all words and phrases contained in the statutes are used according to their common and ordinary acceptation and meaning; but technical words and phrases according to their technical meaning." The statute here controlling uses the words "sell and convey" in the grant of power, and the common acceptation as well as technical meaning must be to pass the title of the county to another. That construction is fortified by the fact that it is stated that a sale may be made on credit, and further that a lien for the purchase money shall be preserved to the county when sales on credit are effected. The construction is still further fortified and made certain by the fact that the president of the board of supervisors, pursuant to an order on the minutes of the board, may execute a deed of conveyance in the name of the county. For a long time in the history of the State, there was no authority in the board of supervisors, or its predecessors by another name, to sell and convey any of the real estate belonging to the county. The section authorizing this power first appeared in substance in Section 304 of the Annotated

Code of 1892. See Jefferson County v. Grafton et al., 74 Miss. 435, 21 So. 247, 36 L. R. A. 798, 60 Am. St. Rep. 516. In that case, this Court quoted, with approval, from the case of Parish of West Carroll v. Gaddis, 34 La. Ann., 928, in which that Court held, with reference to boards of supervisors, that: "They do not acquire for themselves as a political organization. They acquire for the benefit of the public, of the people, particularly the local community, which is represented primarily by the State, and secondarily by them, but so far only as the State has delegated to them the power to do so. As State auxiliaries, they cannot dispose of public property, unless with the formal sanction of the State, and even then, in those cases only in which the State, violating no trust and no contract, and infringing the rights of no one, could herself legally act. Creatures, they are wholly dependent upon and controlled by their creator. They have no life, no attribute, no power, no rights, no obligation, but such as have been conferred or imposed upon them." In Howe v. State, 53 Miss. 57, this Court said in part: "It matters not whether its [board of supervisors] action . . . be regarded as judicial, legislative, or ministerial. Excess of authority in either capacity is simply void. . . . They can do valid acts, only as empowered by law."

The reference to Section 221, wherein the board of supervisors is authorized to arrange a courthouse yard and a fence around it, and plant shade trees therein, does not aid appellant in its construction of "sell and convey" to include "lease;" for the powers there given to maintain a fence only means that the board of supervisors is authorized to make somewhat of a park of the lands immediately adjacent to the courthouse building, and it was not intended thereby to empower the board of supervisors to surrender by lease any part of the lot set aside or used for the purpose of parking. An examination of the Code of 1930 reveals, with reference to the acquisition of lands, the Legislature intended that the board of

supervisors might either purchase or lease lands or might purchase and lease for various public county purposes, but the Legislature has made a distinction in the use of the language applicable; and without quoting them, we call attention to Sections 217, 291, 4060, 4062, 6381, 6384 and 6385. These sections demonstrate that the Legislature has pursued a court of authorizing the purchase and lease of lands, or the purchase or lease of lands, or one without the other, as in its judgment it thought proper.

In this connection, we might say that the power to sell is here so clearly distinguished from the power to lease as not to call for debate; but there is a manifest reason therefor, for if a predecessor board could lease county land, it would prevent its successors from exercising the power to sell and convey, the very thing which the Legislature has granted—the power to sell lands of the county which have ceased to be used or useful for public purposes. As illustrative of this position, see the case of State ex rel. Scott v. Hart et al., 144 Ind. 107, 43 N. E. 7, 33 L. R. A. 118. A board of supervisors may not, by contract, preclude itself or its successors in office from the right and the duty to exercise the power given it by a statute, whenever, in its judgment or discretion, it is deemed necessary to exercise a clearly granted power.

(2) We think it is sufficient answer to all of the argument advanced by appellant for the purposes of this case, that the construction placed upon the controlling statute here by the board of supervisors is binding upon the court. They had no power to lease under Section 216, but they had power to sell and convey upon the condition there imposed. Therefore, their construction of the section was erroneous for we think there is no ambiguity in the language of the statute. Conard Furniture Company v. Miss. State Tax Commission, 160 Miss. 185, 133 So. 652; Briscoe v. Buzbee, 163 Miss. 574, 143 So. 407, 887; Greaves et al. v. Hinds County ex rel., 166 Miss. 89, 145

So. 900, are not authorities here for appellant. In the first case mentioned, a construction placed upon a statute which was ambiguous by the Mississippi State Tax Commission, a departmental construction, was allowed to have some weight in the enforcement of the tax statutes, but our attention has not been called to a case where this Court has ever held that the board of supervisors of a county can bind itself or the counties by a construction of a statute investing it or not with certain clearly defined powers.

There are eighty-two counties in this State. Suppose the boards of supervisors of some counties should construe the statute here involved to mean that such boards were not authorized to sell and convey any part of the courthouse lot unless the courthouse had been removed to another lot; still others of such boards should construe this statute to mean that they could cease to use a part of the courthouse lot and therefore could sell and convey a part thereof but could not lease any portion, and yet other boards should hold under like conditions that they could sell, convey or lease; what then would be the law in this State in that situation? To ask is to answer, that such construction as to the powers of the boards of supervisors have no effect whatever upon the courts of this State.

(3) There is absolutely no merit in the contention that the board of supervisors became estopped by the execution of the lease, by having a suit brought and then having it dismissed, and by permitting others to acquire a lease of a part of the courthouse land. In other words, the board of supervisors cannot be estopped by its negligence or affirmative acts with reference to these lands. Counsel relies mainly upon the case of the City of Jackson v. Merchants' Bank & Trust Company, 112 Miss. 537, 73 So. 573. The case, state in the syllabus, is as follows: "Where complainant's predecessor in title owned a triangular lot at the intersection of two streets and desiring to erect a building thereon employed a contractor to

erect such building who obtained a permit from the clerk of the city but was told by him that before the building could be erected it would be necessary for the city engineer to establish the street lines at that point and accordingly the city engineer did establish such street lines, but erroneously placed the street line on one of the streets several feet over the true and correct line. In such case where the building was erected on the line given by the city engineer and extended several feet into the street, the city was estopped from injuring or damaging the building while it stood on the strip of ground in the street, but the public was not divested of title to such strip, and complainant's only right was to have its possession quieted and confirmed so long as the wall might stand on the strip.'' The city engineer who caused the wall of the building to be erected on the street was acting under authority. In the case at bar, the board of supervisors was without power to lease the courthouse lands under the circumstances. Therefore, being without power to lease it, or even to sell it except upon the condition named in the statute, no estoppel could arise against it for the lease is absolutely null and void.

Affirmed.