WALLER, Chief Justice,
for the Court:
¶ 1. The Northeast Mental Health-Mental Retardation Commission challenges the validity of a ninety-nine-year fixed-lease agreement with a private contractor named V.M. Cleveland. The Commission contracted to pay Cleveland $18,000 per month over a ninety-nine-year period to build and to lease a facility on land owned by the Commission. Payments continued uninterrupted for ten years, until the Commission became concerned about the agreement’s legality. The Commission stopped making payments and sought to rescind the agreement.' The chancellor found that the agreement was enforceable and ordered the Commission to pay Cleveland $612,000 in back rent. The Commission appeals, arguing that the agreement’s ninety-nine-year duration renders the agreement voidable at the Commission’s discretion as a matter of law due to the rule against binding successors. ' The Commission also argues that the specific terms of the agreement are unreasonable, illegal, or both, and thus void ab initio as a matter of law. Because this agreement violates the common-law rule against binding successors, we reverse the chancellor’s *603 judgment and render judgment in the Commission’s favor.
FACTS AND PROCEDURAL HISTORY
¶ 2. The Northeast Mental Health-Mental Retardation Commission (“the Commission”) is a regional health commission established under Section 41-19-33 of the Mississippi Code and a political subdivision of the State of Mississippi. The Commission is governed by a seven-member board of commissioners, each of whom serves a four-year term.[1] Miss.Code Ann. § 41-19-35 (Rev.2013).
¶3. In June 2000 the Commission and V.M. Cleveland entered into a Contract and Lease Agreement (“the Agreement”) to build a facility to house and operate the Commission’s chemical-dependency facilities in Lee County,. Mississippi. Cleveland agreed to construct the facility at his own expense on land owned by the Commission.[2] The Commission leased its state-owned land to. Cleveland and committed to pay Cleveland $18,000 per month for ninety-nine years and to perform certain maintenance. Cleveland was not obligated to pay the Commission for the use of the land. The Agreement provided that, should the Commission have insufficient state and federal funds to make payments at any time during the ninety-nine-year period, the Commission was to quitclaim its land and the facility to, Cleveland. Af-te.r Cleveland completed the facility, the Commission began paying rent.
" ¶ 4. Four years later, the Commission hired Robert Smith as the new director. After reviewing the Agreement, Smith became concerned that the ninety-nine-year term and forfeiture clause were illegal. Based on Smith’s advice, in September 2011, the Commission agreed to stop making payments and voted to void the Agreement. Up to that date, the Commission had expended $2,160,000 in lease payments to Cleveland.
¶ 5. The Commission sought a declaratory, judgment in the Lee County Chancery Court, claiming that the Agreement was void on the basis that a boárd governing a political subdivision may not enter into agreements that bind successor boards without express statutory authority. Cleveland answered the complaint in November 2011, denying the Agreement’s invalidity and asserting counterclaims for declaratory relief affirming the lease’s terms and awarding specific performance and breach-of-contract damages.
¶ 6. In June 2012, Cleveland moved for summary judgment. , The . Commission filed a competing motion for summary judgment. In August 2012, the chancellor granted partial summary judgment in Cleveland’s favor as to the Agreement’s enforceability. But the chancellor found genuine issues of material fact remained as *604 to the necessity for the Commission to rescind the lease or whether such action directly or indirectly promoted its statutory purposes. In July 2014, a trial was conducted on the remaining issues. In August 2014, the chancellor found that the Agreement was fully enforceable and awarded $612,000 in back rent to Cleveland.
¶ 7. The Commission appeals and raises the following issues: (1) whether the Agreement was voidable at the Commission’s discretion as a matter of law based upon the rule against binding successors, and (2) whether the Agreement was void ab initio as a matter of law based on its unreasonable duration, fixed rental terms, and an illegal interest rate. Finding that the chancellor erred in not holding that the Agreement was voidable at the Commission’s discretion due to the rule against binding successors, we reverse this judgment and render judgment in the Commission’s favor. Since the first issue is dis-positive of this case, we decline to address the second issue.
ANALYSIS
¶ 8. The inquiry here is a question of law. Because the issue here concerns a question of statutory interpretation and contract construction, it is governed by a de novo standard of review. Epperson v. SOUTHBank, 98 So.3d 10, 16 (Miss.2012); Capital One Servs. v. Page, 942 So.2d 760, 762 (Miss.2006).
I. Whether the Agreement was yoida-ble at the Commission’s discretion as a matter of law based upon the rule against binding successors.
¶ 9. Under the common law in Mississippi, governing bodies, whether they be elected or appointed, may not bind their successors in office by contract, unless expressly authorized by law, because to do so would take away the discretionary rights and powers conferred by law upon successor governing bodies. See, e.g., Biloxi Firefighters Ass’n v. City of Biloxi, 810 So.2d 589 (Miss.2002); Smith v. Mitchell, 190 Miss. 819, 1 So.2d 765 (1941); American Oil Co. v. Marion County, 187 Miss. 148, 192 So. 296 (1939); Tullos v. Town of Magee, 181 Miss. 288, 179 So. 557 (1938); Edwards Hotel & City R. Co. v. City of Jackson, 96 Miss. 547, 51 So. 802 (1910). The law provides that these types of contracts are voidable at the discretion of the successor governing body. Id.

A. A political board or commission cannot prevent a successor administration from exercising an express statutory power by contract.

¶ 10. Central to our decision here is American Oil, 187 Miss. 148, 192 So. 296. The Commission argues that, according to American Oil, a contract that binds successors is voidable at the option of the successor board, and that this is especially true with lease agreements that prevent public bodies from selling their property. Cleveland responds that this Court voided the lease in American Oil solely because the statute at issue in American Oil did not grant the board the power to lease property. Since Section 41-19-33(l)(a) of the Mississippi Code grants the Commission the authority to lease, Cleveland argues that American Oil does not apply here. Cleveland correctly notes that the American Oil Court voided the lease because the board lacked statutory authority to lease county property in that case. But that was not the only reason the Court voided the lease contract.
¶ 11. In American Oil, the board of supervisors of Marion County executed a lease for county property for a term of twenty-five years. Id. at 297. The successor board filed a bill to cancel the lease *605 executed by its predecessor board, and the trial court cancelled the lease. Id. The board of supervisors in American Oil had statutory authority to sell and convey county property. Id. But this Court found that the statutory authority “did not embrace the power to lease [county property] for a term of years.” Id. at 298. The Court declared the lease null and void, reasoning that “if a predecessor board could lease county land, it would prevent its successors from exercising the power to sell and convey, the very thing which the Legislature has granted — the power to sell lands of the county which have ceased to be used or useful for public purposes.” Id. at 299-300 (emphasis added).
¶ 12. The Court also held the lease contract was voidable as a matter of law because its excessive duration prevented the board from exercising its full authority to sell and convey property, even if the board had the power to lease. American Oil, 192 So. at 299. That is why this Court stated “[a] board of supervisors may not, by contract, preclude itself or its successors in office from the right and the duty to exercise the power given it by a statute, whenever, in its judgment or discretion, it is deemed necessary to exercise a clearly granted power.” Id. The Court voided the lease because the board lacked statutory authority to lease and it was for an impermissible duration that bound successor boards. Cases before and after American Oil support this reading of the case. See infra ¶¶ 14-20 (discussing Biloxi Firefighters, 810 So.2d at 590-93, and Edwards Hotel, 51 So. at 803-04).
¶ 13. The Agreement between the Commission and Cleveland prevents future commissions from selling and conveying the subject property, exactly like the lease in American Oil The Agreement requires the Commission to pay Cleveland $18,000 a month in rent for ninety-nine years and to lease the facility on state-owned property without the ability for successor commissions to renegotiate. It attempts to bind successor commissioners, who serve only four-year terms, without any statutory authority. By entering into this Agreement, the Commission’s statutory authority “[t]o acquire, own and dispose of real and personal property” under Section 41-19-33(l)(m) of the Mississippi Code clearly was impeded. .We agree that the Agreement is voidable at the Commission’s discretion as a matter of law.

B. The Agreement violates the rule against binding successors and is voidable as a matter of law at the Commission’s discretion.

¶ 14. This Court repeatedly has applied thé rule against binding successors to void all types of agreements, even when that board or municipality had statutory authority to lease or contract, but not statutory authority to bind successors. One such case is Biloxi Firefighters Association, 810 So.2d 589. The city adopted a resolution that designated a firefighters’ association as the collective bargaining agent of the city’s firefighters. Id. at 590. The resolution required that the mayor “enter into good faith negotiations” with the association. Id. After a successor board took office, the- new mayor vetoed the resolution. Id. The association sought a declaratory judgment to require the mayor to negotiate with the association as the resolution mandated. Id.
¶ 15. This Court considered whether the resolution in Biloxi Firefighters was binding upon subsequent administrations. Id. at 591. This Court did not strike down the resolution solely because the board of aldermen lacked the statutory authority to engage in collective bargaining. In fact, the Court said that the board possessed that power. The board had the power to adopt, modify, or repeal resolutions and *606 ordinances, to “ ‘provide for the prevention and extinguishment of fires,’” and “‘to provide for and maintain a fire department -Id.
¶ 16. • This Court in Biloxi Firefighters noted the discretion municipal authorities have to determine the manner in which they exercise their powers. Id. at 592 (quoting Webb v. City of Meridian, 195 So.2d 832, 835 (Miss.1967)). A city’s dealings with employees are discretionary. Id. (citing Scott v. Lowe, 223 Miss. 312, 318, 78 So.2d 452, 454 (1955)). Relying on American Oil, this Court found that passing the resolution was an ultra vires act “(one which is beyond the powers conferred upon the municipality by law) and not binding on its face.” Id. The “city council could not contract away a subsequent governing body’s ‘control of municipal affairs, property, and finances.’ ” Id. Nor could the city contract away a successor administration’s right to maintain and regulate the fire department. Id.
[T]his act was clearly discretionary and thus not binding on successor city administrations. To hold otherwise would permit city administrations, through their actions, to “tie the hands” of successor administrations and totally destroy their ability to effectively conduct city business. Accordingly, we hold here that the ... adoption of [the resolution] was not- binding on subsequent Biloxi city councils which, in the exercise of discretion, could determine whether to adhere to the provisions of this resolution.
Id. at 593. .
¶ 17. This Court continued, “[o]ne city council cannot legally adopt a resolution binding a successor administration on discretionary matters.... To hold that such action as a matter of law binds a subsequent administration would violate well-settled Mississippi case law.” Id. at 595.
¶ 18. This well-settled caselaw includes Edwards Hotel & City Railroad Co., 51 So. at 802. Like the resolution in Biloxi Firefighters, this Court in Edwards Hotel applied the rule against binding successors not because the administration lacked statutory authority to enact ordinances concerning paving, but because the- ordinance lasted for ten years and bound successor boards. In Edwards Hotel, the mayor and board of aldermen had the statutory authority to exercise, in their discretion, full jurisdiction to repair, maintain, and pave streets and sidewalks. Id. at 804. They also had statutory authority to enact, modify, and repeal ordinances. Id.
¶ 19. The city in Edwards Hotel passed an ordinance that granted the street railway company an exemption from a paving requirement for ten years. Id. at 803. The city later rescinded the exemption and sought to compel the company to pave tracks on certain streets. Id. at 804. The company refused and claimed the exemption under the ordinance. Id. This Court stated:
Each mayor and board of aldermen cannot exercise full jurisdiction if predecessors may tie' their' hands in the matter of requiring to be done any matter which is comprehended in the exercise of full jurisdiction; that is 'to say, each mayor and board of aldermen has a right, in their discretion, to say when paving is necessary. It is a discretion which vests in them at the time they choose to exercise it ... if one mayor and board of aldermen can take away a part of the right to exercise full jurisdiction as to the streets, it would, to that extent, abridge the right which vests in the city to have its mayor and board of aldermen exercise full jurisdiction at all times.
Id. at 805. This Court in Edwards Hotel *607 held that the ordinance was ultra vires.[3] Id. “If we were to hold otherwise, one set of city officers could defeat the powers delegated to the city and preclude' a succeeding set of officers, however necessitous might be the cause, from ... [using the powers granted it].” Id.
¶20. This Court also has held that a contract was ultra vires and unenforceable for “attempting to fix the compensation of a city employee to cover a period of employment extending beyond any reasonable limitation.” Tullos, 179 So. at 558-59. This Court held “it is beyond the power of municipal officers to bind their successors in office in the exercise of their discretionary authority to fix the compensation of employees — ” Id. at 558.
¶ 21. The Attorney General’s Office consistently has advised political entities that they may not bind successors in office in the exercise of their discretionary authority unless there is express statutory authority to do so. The Attorney General also has warned that any agreement that violates this rule is voidable by successor boards. See, e.g., Jacks, Op. Att’y Gen. No. 2010-00040 (Feb. 26, 2010) (“The Mississippi Supreme Court, as well as official opinions of this office, have long held that governing authorities may riot bind successors in office in the exercise of their discretionary authority, including the leasing of county and municipal property, unless there is ‘express statutory authority’ to do so.”).[4] Although Attorney General opinions are not binding on this Court, we may view them as persuasive authority. Poppenheimer v. Estate of Coyle, 98 So.3d 1059, 1066 (Miss.2012).

C. Entering into the Agreement was an exercise of discretionary authority rather than of mandatory authority.

¶ 22. Cleveland attémpts to distinguish ' the case before us and contends that, when' the Commission entered into this Agreement, the Commission was exercising mandatory, not discretionary, authority. Cleveland responds that the chancellor was correct in finding that the Agreement did not bind the Commission’s discretionary powers. The statute governing regional commissions states that commissions “shall have the following authority and shall pursue and promote the following general purposes:....” Miss. Code Ann. § 41-19-33(1) (Rev.2013) (emphasis addéd). This includes the authority to “establish, own, lease, acquire, construct, build, operate and maintain mental illness, mental health, intellectual disability, alcoholism and general rehabilít'átivé facilities and services_” Miss.Code Ann. § 41-19-33(l)(a) ‘ (emphasis added). The chancellor found that, according to this section of the statute, it is mandatory that the Commission obtain appropriate facilities to provide services required under the law.
¶ 23. The Commission argues this statute contains permissive, not mandatory *608 language.[5] We agree with the Commission’s interpretation of the statute. The statute grants the Commission the authority to provide facilities and services by a plethora of options. It does not mandate that the Commission own, build, construct, or lease anything. It may be mandatory for the Commission to administer mental health programs. After all, “[i]t shall be the duty of such regional, commission to administer mental health/intelleetual disability programs_” Miss.Code Ann. § 41-19-33(1). But we believe how the Commission decides to administer these programs is discretionary. The Commission could have bought another building and converted it into a chemical-dependency facility. It could have hired a construction company to build the facility or conduct outpatient services. Simply put, the discretionary act here was signing the lease agreement to carry out its mandated function, of administering mental health programs.
¶ 24. Besides, acquiring facilities is not the only power bestowed upon the Commission. For example, the Commission has the authority to enter into contracts with private entities for maintenance. Miss.Code Ann. § 41 — 19—33(l)(e). As we noted earlier, the Commission also has the authority “[t]o acquire, own and dispose of real and personal property.” Miss.Code Ann. § 41-19-33(l)(m). Both of these are discretionary acts, and this Agreement frustrates the successor board’s ability to exercise these powers.

D. The Commission’s statutory authority to lease and contract does not allow it to enter into leases and contracts for ninety-nine years.

¶ 25. Having determined that the Commission was exercising its discretionary authority when it entered into the Agreement, we-must look to see if there is any statutory authority that allows it to enter into contracts or leases that bind successor boards. Our Legislature has granted many public entities the authority to enter into contracts and lease agreements. And the Legislature also has taken further steps by granting specific entities the power to enter into long-term agreements that exceed their governing members’ terms. For example, the Legislature expressly has authorized state institutions of higher learning to enter into long-term leases that do not exceed thirty-five years. Miss.Code Ann. § 37-101-41 (Rev.2014). Airport authorities may enter into leases not to exceed fifty years. Miss. Code Ann. § 61-5-11 (Rev.2013). Section 31-8-3 of the Mississippi Code permits counties and municipalities to enter into lease agreements for facilities not exceeding twenty years. Miss.Code Ann. § 31-8-3 (Rev.2010). (See also Oktibbeha Cty. Bd. of Educ. v. Town of Sturgis, 531 So.2d 585 (Miss.1988)) (voiding a ninety-nine-year lease because the county was granted authority only to enter into a twenty-five-year, not a ninety-nine-year, lease).
¶26. Unlike these governing authorities, the Legislature has not granted mental health commissions the authority to enter, into long-term contracts or leases. So the Commission argues that any contract the Commission enters into must be for either a term not exceeding four years, or it is voidable by subsequent commissions. Cleveland counters that if the Legislature had intended to authorize the Commission only to enter into contracts for the remaining length of its term, then the Legislature easily could have placed that restriction in the statute.
*609 ¶ 27. We agree with the Commission and reject Cleveland’s argument. We evoke the rule that “ordinarily a new statute will not be considered as reversing long-established principles of law and equity unless the legislative intention to do so clearly appears.” Thorp Commercial Corp. v. Mississippi Road Supply Co., 348 So.2d 1016, 1018 (Miss.1977). The rule that current governing bodies may not bind their successors by contract in the exercise of their discretionary powers has been a long-established rule in Mississippi for more than a century. See Edwards Hotel, 96 Miss. 547, 51 So. 802. We do not believe that Section 41-19-33, when read as a whole, shows a clear legislative intent to abrogate the common-law rule against binding successors. Thus, we believe that, had the Legislature intended to grant the Commission authority to enter into contract and lease agreements for ninety-nine years and to bind successor boards, -it specifically would have provided so in the statute.
¶28. We hold that the Agreement binds successor commissions in the exercise of their discretionary authority to sell and convey the subject real property, to contract for maintenance, and to renegotiate the lease. The predecessor commission executed this Agreement without express statutory authority to do so. For these reasons, we find that the chancellor erred in not finding the Agreement was voidable as a matter of law at the Commission’s discretion. Thus, we reverse the judgment of the Lee County Chancery Court and render a decision in favor of the Commission.
II. Whether the Agreement is void ab initio as a matter of law based on its illegal interest rate, fixed rental terms, and unreasonable duration.
¶ 29. Because our decision on the first issue is dispositive, we will not address this second issue. Deviney Constr. Co. v. Marble, 60 So.3d 797, 803, ¶15 (Miss.2011).
CONCLUSION
¶ 30. The judgment of the Lee County Chancery Court is reversed. We render judgment in favor of the Commission, finding that the Agreement was voidable as a matter of law at the Commission’s discretion, because the ninety-nine-year Agreement binds successor commissions in the exercise of their discretionary authority without express statutory authority to do so.
¶ 31. REVERSED AND RENDERED.
RANDOLPH,P.J., LAMAR, KING ' AND BEAM, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., COLEMAN AND MAXWELL, JJ.

. The commissioners represent Benton, Chickasaw, Itawamba, Lee, Monroe, Pontotoc and Union Counties. Each is nominated by his' or her respective county’s board of supervisors. See Miss.Code Ann. §§ 41-19-31, -33 (Rev.2013).

. At trial, counsel for the Commission stated, “If it please the Court at this time, I would like to mark for,identification what Mr. Herring [Cleveland’s counsel] and I have stipulated and agreed reflects the actual cost that Mr. Cleveland incurred in constructing the facility.” (Emphasis added.) Cleveland’s counsel objected, but only to admitting the amount based on relevance. The chancellor made it clear he intended to rule on the relevance of this exhibit, in .his opinion, but it was not addressed there. The exhibit was marked for identification as Exhibit 3, and it reflects the - amount of construction cost as $807,672. The construction cost also, was set out in the Commission’s brief and was referenced during oral argument without objection.

. Ultra vires, "A body exercising an invalid excess, or power of authority.” Black’s Law Dictionary (9th ed.2009).

. See also Lucas, Op. Att’y Gen. No. 2009-00381 (Aug. 28, 2009) ("It has long been recognized in Mississippi that governing boards, elected and appointed, may not bind their successors in office by contract unless expressly authorized by law.”); Clayton, Op. Att’y Gen. No. 2004-0329 (July 28, 2005) (finding no exception to the rule against binding successors for the authority to operate a center on property for a term- of ninety-nine years); Power, Op. Att’y Gen. No. 2008-00016, (Feb. 8, 2008); Latham, Op. Att’y Gen. No. 2006-0064 (Jan. 19, 2007); Connell, Op. Att’y Gen. No. 2005-0459 (Oct. 15, 2005); Belk, Op. Att’y Gen. No. 2003-0527 (Oct. 3, 2003); Moore, Op. Att’y Gen. No. 200-0032 (Feb. 4, 2000).

. The Commission argues having “authority” does not mandate the exercise of that authority, and by its very nature, is discretionary. See Authority, Black's Law Dictionary (9th ed.2009) (defining authority as "[t]he right or permission to act legally on another's behalf.”).