THORNHILL, et al. v. FORD.

Division A. Jan. 14, 1952.

No. 38190 (56 So. (2d) 23)

C. V. Hathorn, Wells, Wells, Newman & Thomas, and Hall & Callender, for appellants.

Satterfield, Ewing, Williams & Shell, for appellee.

**Holmes, C.**

This suit presents a controversy about the title to an undivided one-half interest in the oil, gas and other minerals in the Northeast Quarter of the Southeast Quarter of Section 11, Township 1 North, Range 17 West, Marion County, Mississippi, and involves among other questions a construction of Section 6605 of the Mississippi Code of 1942, which reads as follows:

"The board of supervisors of the respective counties in the State of Mississippi are hereby authorized to purchase any real property or other security pledged to any county to secure loans from the sixteenth section funds at any sale resulting from the default in the payment of the interest or principal of any loan or any part thereof, provided no other bid or offer is made at such sale for an amount equal to the total amount of the principal, interest and all costs of such sale, and the party so making such sale is authorized to execute the proper deed or conveyance for said property to the county, said property or security to be held by said county for the use of sixteenth section funds from which the loan or loans on said security were made; and the board of supervisors of the county are hereby authorized to sell, rent or lease said property or security, either at private or public sale, as the board of supervisors shall deem for the best interests of sixteenth section funds. Such sales or leases shall be made either for a cash consideration, or part cash, and the balance in deferred payments, in the discretion of said board, and the balance in deferred payments not to exceed five years from date of sale by said board, and the county shall have a lien on same for purchase money, as against all persons until paid; or said property may be sold and paid for as hereinafter provided.

"The deed of such conveyance in such cases shall be executed in the name of the county, by the president of the board of supervisors, pursuant to an order of the board entered on its minutes. The proceeds of all such sales, rents or leases shall be paid to the proper sixteenth section funds from which the loan originated, and for which the security so sold was pledged.

"The board of supervisors may accept in payment for the sale of said property, the bonds of the Home Owners Loan Corporation at par and accrued interest, and said board may accept in payment of any indebtedness owing, or that may become due and owing, for the loans of six-

teenth section funds, the bonds of said Home Owners Loan Corporation at par and accrued interest thereon.

"Any real property, or other security, pledged to secure loans from the sixteenth section funds, and heretofore or hereafter purchased by a county, may be sold by said county to any person, including the original borrower on, or owner of, said property or security, for the value thereof, at the time of the sale by it mentioned in this section, to be ascertained and determined by the board of supervisors, and said board may accept in payment for such property or security cash, or part cash, and the balance in deferred payments not to exceed five years; or may accept in whole or in part payment for such property or security the bonds, whensoever and howsoever the same may mature, of the Home Owners Loan Corporation at par and accrued interest thereon to the date of the delivery of the said bonds."

The litigation arises out of the following facts: On March 5, 1923, Marion County loaned to L. L. Askew from its sixteenth section funds the sum of $1,000, and accepted as security therefor a deed of trust executed by the said Askew on 320 acres of land which he owned in said county, including the land here involved. Default was made in the payment of the indebtedness and the deed of trust was foreclosed. The county became the purchaser at the foreclosure sale of the entire 320 acres at and for the sum of $1265, which was the highest bid for said property and less than the amount of the indebtedness secured, and pursuant to said sale the trustee conveyed the entire 320 acres to the county on April 18, 1940, and the county thereby became the owner of the entire property, to be held for the use of the sixteenth section funds from which the aforesaid loan was made.

On May 7, 1940, appellee applied in writing to the board of supervisors of Marion County to purchase 40 acres of the said 320 acres, being the 40 acres here involved, and described as the Northeast quarter of the Southeast quarter of Section 11, Township 1 North, Range

17 West, and offered to pay therefor the sum of $100 cash. This application was filed at the May, 1940 meeting of the board and no action was taken thereon at said meeting but at said meeting the board adopted and entered on its minutes a general order declaring it to be to the best interest of the sixteenth section funds that no sixteenth section lands, lieu lands, or sixteenth section securities, be sold, conveyed, or leased without reserving and retaining an undivided one-half interest in the oil, gas and other minerals therein, and ordering such course to be followed in the future. At the June, 1940 meeting of the board, a committee of the board appointed to investigate and report on the application of appellee to purchase the 40 acres here involved, filed a written report, reporting that $100 represented the fair and reasonable value of the land, and recommending that the land be sold to appellee for $100 cash, but all with the express understanding that the county retain an undivided one-half interest in the oil, gas and other minerals therein. Accordingly, at the same meeting of the board, an order was adopted and entered on the minutes, reciting that the committee had reported that the offer of $100 cash for the land, the county retaining one-half of the oil, gas and other minerals therein, was a fair and reasonable offer, and finding and determining said sum to be a fair and reasonable price, and authorizing and directing the sale and conveyance of the land to appellee, retaining in the county an undivided one-half interest in the oil, gas and other minerals, and finding and determining that it was to the interest of the sixteenth section funds so to do. Pursuant to said order, and on June 13, 1940, a proper deed was executed by the president of the board in the name of the county, selling and conveying to appellee, H. G. Ford, in consideration of the sum of $100 cash, "the lands now held in the name of Marion County, Mississippi, for the use and benefit of the sixteenth section funds thereof and specifically described as follows to-wit: Northeast quarter of Southeast quar-

ter of Section 11, Township 1 North, Range 17 West, in Marion County, Mississippi, and an undivided. one-half interest in all oil, gas and/or other minerals on and under said lands above conveyed." Incorporated in the deed also was the following: "It being specifically understood and agreed that Marion County retains an undivided one-half interest in all oil, gas and/or minerals on or under said lands and the necessary rights of ingress, egress and regress on, over, and across said lands for the purpose of exploiting, searching for and if found mining and transporting said minerals and producing and using and transporting said gas and oil on, over and across said lands for the use and benefit of the sixteenth section funds of said county."

Appellee arranged a loan at the Columbia Bank to get the money to pay for his purchase. He testified that he got the deed at the bank and that at the time he received the deed someone at the bank told him that the county had retained one-half of the minerals. He made no complaint about it until this suit was filed in 1947. He testified that he never appeared before the board in person. Two members of the board and the attorney for the board testified that appellee came before the board and was expressly informed that the county was retaining one-half the minerals. Two days after he got the deed, he executed an oil and gas lease on the land, representing therein that he owned only an undivided one-half interest in the minerals. That lease lapsed by reason of the non-payment of the delay rentals and appellee later executed another oil and gas lease on the land, under which he accepted and was accepting at the time of the trial of this cause delay rentals on only an undivided one-half interest in the minerals.

On November 1, 1943, the county executed an oil, gas and mineral lease to G. G. Stanford on an undivided one-half interest in the minerals in the entire 320 acres. This lease, by assignments, was transferred in the proportion of a one-half interest therein to appellant Bluebird In-

vestment Company and a one-half interest therein to appellant American Liberty Oil Company, which later merged and consolidated with appellant Southport Petroleum Company of Delaware.

On October 7, 1944, the county, by separate conveyance, sold and conveyed to C. L. Thornhill an undivided one-fourth interest in the minerals in 160 acres of the total 320 acres and an undivided one-fourth interest in the minerals in the remaining 160 acres of the total 320 acres. After these mineral conveyances, the county asserted and continues to assert title to an undivided one-fourth interest in the minerals in the entire 320 acres. The county regularly collected the delay rentals under its aforesaid lease to G. G. Stanford. From the one-fourth mineral interest which C. L. Thornhill purchased from the county, he sold and conveyed fractional interests in the minerals to various individuals with the result that said one-fourth interest is now claimed in various proportions by appellants, C. L. Thornhill, W. Esco Thornhill, Carlton Rayburn, Miss Evonne Brown, T. H. Barnes, Lee D. Hall, Mrs. Albertine Hall, and Ross Guyton.

On March 1, 1947, appellee filed his bill against the appellants in the Chancery Court of Marion County, claiming that the county attempted in its deed to appellee to reserve an undivided one-half interest in the minerals and that this attempted reservation was without authority of law and was void, and that by virtue of his deed from the county he acquired title to the land and all of the minerals in the land. He prayed that all of the instruments by which appellants claimed any interest in the undivided one-half mineral interest here involved be cancelled as clouds upon his asserted title thereto, and that he be adjudged to be the true and lawful owner of said one-half mineral interest.

The county and the corporate defendants and the group of individual defendants filed separate answers, denying that the county was without authority to convey the land retaining a one-half undivided interest in the minerals,

averring that the president of the board of supervisors was not authorized under the board's order to convey the land without retaining an undivided one-half interest in the minerals, and pleading defenses of laches, estoppel, and innocent purchaser for value.

The corporate defendants and the group of individual defendants incorporated cross-bills in their respective answers and prayed a decree adjudging the validity of their respective claims to the undivided one-half mineral interest here involved.

The case came on for hearing on November 9, 1948. At the conclusion of the trial, the chancellor took the case under advisement and more than two years later, to-wit, on December 9, 1950, rendered his decree granting the prayer of the original bill and dismissing the cross-bills of the corporate and individual defendants.

The contention of appellee on this appeal is succinctly stated by him as follows: "The position of the appellee is that the deed was valid and binding from its dating and that clearly, simply and absolutely, as a matter of law alone, the attempted reservation or exception was null and void and of no effect, leaving the fee simple title vested in H. G. Ford under the deed, valid in every particular except the void reservation."

It will readily be seen that although the president of the board of supervisors had no authority under the board's order to convey the land to appellee without retaining an undivided one-half interest in the minerals, and that although the deed to appellee was so drawn, he claims by virtue of said deed the entire fee in the land, including all estates therein. This is also notwithstanding the fact that the great weight of the evidence shows that at the time of appellee's purchase from the county, he was expressly advised that the county was retaining one-half the minerals, and that at the time he accepted the deed he was advised and knew that the county retained therein one-half the minerals, and that two days thereafter he executed an oil, gas and mineral lease on

the land and represented therein that he was the owner of only an undivided one-half interest in the minerals. It would appear, therefore, from the great weight of the evidence that the minds of the parties met only on the proposition that the county was to sell appellee the land, including only an undivided one-half interest in the minerals, and that appellee was to purchase the land, including only an undivided one-half interest in the minerals, but such conclusion is not necessary to the decision we have reached in this case.

There are other factors in the case which we shall now consider and which in our opinion are wholly determinative.

Appellee contends that by the county's deed he was conveyed the fee in the 40 acres with a reservation in the county of one-half the minerals and that such reservation was void becase not authorized by law and that the said reservation should, therefore, be stricken and the conveyance in fee permitted to stand as valid. If such is the effect to be given the deed, then it was wholly unauthorized and ineffective to vest any title in appellee. Under the express provisions of Section 6605 of the Mississippi Code of 1942, no lands held as security for the loan of sixteenth section funds and purchased by the county at foreclosure sale could be sold and conveyed except by a deed "executed in the name of the county, by the president of the board of supervisors, pursuant to an order of the board entered on its minutes". Section 4048 of the Mississippi Code of 1942 also provides: "An officer shall not enter into any contract on behalf of the state, or any county, city, town, or village thereof, without being specially authorized thereto by law, or by an order of the board of supervisors or municipal authorities."

Of course it is settled law also under the decisions of this Court that the board's action is evidenced solely by the entries on its minutes. In the case of Bridges and Hill v. Board of Supervisors of Clay County, 58 Miss. 817, the Court said: "Boards of supervisors bind counties

only when acting within the range of their authority, and in the mode and manner pointed out by the statutes. Their contracts are evidenced by the entries on their minutes, and can no more be varied by proof that the members failed to speak, though they knew that those with whom they were dealing misunderstood the purport of what they were doing, than they can be created and established by silence alone. █ It takes an affirmative act of the board within the scope of its authority, evidenced by an entry on its minutes, to bind the county by a contract; and when thus made, the contract is not to be varied, any more than created, by the mere silence of a portion of the board and the mixed assertions of others.''

In the case of McPherson et al. v. Richards et al., 134 Miss. 282, 98 So. 685, 686, the Court said: ''In our judgment the contract is plain and unambiguous, and the proof shows a failure to comply with the contract as drawn, and the court has no right to find that the contract was complied with as understood. The contract between the board of supervisors and other parties must be in writing and spread upon the minutes, and when so reduced to writing, and spread upon the minutes the terms of the contract govern, and the parties must perform the contract as made.''

 █ It is manifest, therefore, that the only authority of the president of the board to execute a deed to appellee was that evidenced by the board's order on its minutes which directed the conveyance of the land to appellee, retaining in the county one-half of the minerals. If the deed is to be construed as conveying more, then it was unauthorized and ineffective to vest in appellee the full fee simple title to the land. To hold otherwise would be to enlarge upon the board's order and effect a conveyance of that which the board expressly directed to be retained (and therefore not conveyed), namely, an undivided one-half interest in the minerals.

█ █ We are further of the opinion that the general words of grant in the county's deed do not convey to appellee the full fee simple title to the land. The deed conveys the land ''and an undivided one-half interest in all gas, oil and/or other minerals on or under said lands above conveyed.'' The clear import and effect of these general words of grant are to vest in appellee the title to the land including only an undivided one-half interest in the minerals. If this were not true, then the words ''and an undivided one-half interest in all gas, oil and/or other minerals on and under said lands above conveyed'' would be wholly meaningless. That this is the clear import and effect of the deed is made manifest by the declaration in the deed that it is specifically understood and agreed that the county is retaining, that is to say, not conveying, an undivided one-half interest in the minerals. We think the appellee mistakenly argues that the deed conveys the land and reserves or excepts therefrom one-half of the minerals. There are no reservations or exceptions in the deed as those terms are commonly defined.

█ █ ''A reservation reserves to the grantor some new thing issuing out of the thing granted and not in esse before, and an exception excludes from the operation of the grant some existing portion of the estate or parcel granted which would otherwise pass under the general description of the deed.'' 26 C. J. S., Deeds, Section 137, page 439.

''A reservation or exception can only be out of the estate granted.'' 26 C. J. S., Deeds, Section 139, pages 446-447.

A reservation is of something taken back out of that which was clearly granted. It presupposes a transfer or conveyance of the property out of which the thing reserved issues or arises. In Moore v. Lord, 50 Miss. 229, the Court said of an exception that ''it must be of part of the thing granted and not of some other thing'', and further, ''it must be of such a thing as he that doth except,

may have and doth properly belong to him''. Here there was no conveyance of the land and all of the minerals therein, followed by a reservation of one-half of the minerals or followed by an exception of one-half of the minerals. The general words of grant in the deed conveyed the land and only one-half the minerals. Thus, if what appellee argues to be a reservation were stricken from the deed, there would remain only the grant of the land including only an undivided one-half of the minerals therein. Hence the entire fabric of appellee's argument falls apart and the authorities cited in support thereof readily appear inapplicable.

But finally, and more conclusive, is the authority vested in the board of supervisors under and by virtue of the aforesaid Section 6605 of the Mississippi Code of 1942. ▆▆ ▆ In construing this statute due consideration should be given to its purpose, the object to be accomplished, and the intention of the legislature in enacting it. This is in conformity with the generally recognized rules of construction.

''It is the duty of the Court to give to construing acts their practical application so far as possible, unless inconsistent with the obvious intent of the legislature or repugnant to the context of the statute.'' 59 C. J., at page 947.

In Board of Education v. Mobile & O. Railroad Company, 72 Miss. 236, 16 So. 489, the Court said: ''It is familiar learning that, in the construction of statutes, courts chiefly desire to reach and know the real intention of the framers of the law, and, reaching and knowing it, then to adopt that interpretation which will meet the real meaning of the legislature, though such interpretation may be beyond or within, wider or narrower than, the mere letter of the enactment.''

''While the intent of the legislature is to be found primarily in the language of the statute, where such language is vague, ambiguous, or uncertain, the court may look not only to the language but to the subject

matter of the act, the object to be accomplished, or the purpose to be subserved, it may also look in this connection to the expediency of the act, or its occasion and necessity, the remedy provided, the condition of the country to be affected by the act, the consequences following upon its enactment, or various extrinsic matter which throw some light on the legislative intent. Logic and sound economic principles may serve as a guide to the legislative intent." 59 C. J., page 958.

"In construing a statute to give effect to the intent or purpose of the legislature, the object of the statute must be kept in mind, and such construction placed upon it as will, if possible, effect its purpose, and render it valid, even though it be somewhat indefinite. To this end it should be given a reasonable or liberal construction, and if susceptible of more than one construction, it must be given that which will best effect its purpose, rather than one which would defeat it, even though such construction is not within the literal interpretation of the statute, and even though both are equally reasonable. Where there is no valid reason for one of two constructions, the one for which there is no reason should not be adopted." 59 C. J. 961.

In the case of Smith v. Chickasaw County, 156 Miss. 171, 125 So. 96, 98, 705, the Court said: "In construing a statute, however, not only the language, but the purpose and policy, which the Legislature had in view, must be considered. The court, in construing a statute, will give effect to such purpose and policy, though the interpretation may go beyond, or come within, the mere letter of the statute."

It becomes pertinent, therefore, to inquire into the purpose of the statute under consideration and the object to be accomplished by it and the intention of the legislature in enacting it. The pertinent provisions of said Section 6605 of the Mississippi Code of 1942 were first enacted as Chapter 142 of the Laws of 1916. ▉▉ It is apparent from the entire context of the act that its chief

purpose and object was to protect sixteenth section funds. Prior to the enactment of the act, the board of supervisors was without power or authority to buy in its sixteenth section securities at foreclosure sales and thus prevent a sacrifice thereof and a loss to sixteenth section funds. The act authorized the board to buy in its sixteenth section securities at a foreclosure sale where there was no other bid therefor equal to the amount of the indebtedness secured. It then authorized the board "to sell, rent or lease said property or security either at private or public sale, as the board of supervisors shall deem for the best interest of said sixteenth section funds". It is inconceivable, in view of the purpose and object of the statute, that the legislature intended to restrict the board in disposing of the securities in such manner as the board determined to be to the best interest of the sixteenth section funds. It might well be that a purchaser for the entire property thus acquired could not be found who would pay as much for the property as might be obtained therefor by selling it in separate and divisible portions or estates. The appellee does not question the right and authority of the board under the statute to sell to him 40 acres of the 320 acres acquired at the foreclosure sale. We think that the board, exercising its authority under the statute, might with as much reason sell separately other separate acreage subdivisions of the property, or other separate estates in the property. It has been well settled by the decisions of this court that more than one estate may exist in the same lands. In the case of Fox v. Pearl River Lumber Company, 80 Miss. 1, 31 So. 583, the court said: "By the common law also several sorts of estates or interests, joint or several, may exist in the same fee; as that one person may own the ground or soil, another the structures thereon, another the minerals beneath the surface, and still another the trees and wood growing thereon, etc." Again it was said by this Court in the case of Stern et al. v. Parker, 200 Miss. 27, 25 So. (2d) 787, 789, 27 So. (2d) 402, as

follows: ██ ██ "There may be more than one estate in the same lands, oil and minerals beneath the surface, the surface, and timber on the surface, as instances." It is conceded by appellee that the board had the authority to sell the fee in the entire 320 acres. We think that this embraced the authority to sell separate estates in the property.

"A power to sell a fee ordinarily includes the power to sell a lesser estate or interest, or to grant an easement." 72 C. J. S., Powers, Section 25, page 422. We hold, therefore, that the board had the authority to sell the fee in the entire property or to sell separately acreage subdivisions of the property and reserve or retain mineral interests therein, or to sell the minerals or parts of the minerals separate from the land, as the board might determine to be to the best interest of the sixteenth section funds. We think these views are supported by the case of Federal Land Bank of New Orleans v. Cooper, 190 Miss. 490, 200 So. 729, 731. Pursuant to the authority conferred upon the Federal Land Bank by the Federal Farm Loan Act and other applicable statutes, the bank was authorized to purchase at foreclosure sales the lands on which it held deeds of trust, and to hold the said lands for five years and longer with the approval of the Farm Credit Administration. In selling lands which the bank acquired by foreclosure, the bank reserved one-half of the minerals in the land. Cooper and his vendees sued the bank, seeking to cancel the reservation of a one-half interest in the minerals contained in a conveyance by the bank. Answering the contention that the bank was without authority to reserve an interest in the minerals, the Court said: "The appellant had the right to purchase the land conveyed by it to Cooper at the sale thereof under its deed of trust thereon and to hold it and any separable portion of it for five years, and longer with the approval of the Farm Credit Administration, which purchase ex necessitate carried with it all minerals in the land and vested the title thereto in the appellant. After

the appellant acquired title to the land, it had the right to sell it without the minerals therein to one and the minerals to another, either contemporaneously or at different times.''

In the light of these conclusions, the cases of Burke v. Southern Pacific Ry. Co., 234 U. S. 669, 34 S. Ct. 907, 58 L. Ed. 1527, American Oil Company v. Marion County, 187 Miss. 148, 192 So. 296, and Pike County v. Bilbo, 198 Miss. 775, 23 So. (2d) 530, 672, cited and relied on to support the contention of appellee, have no application to the case here presented.

We are accordingly of the opinion that the chancellor was in error in sustaining the prayer of the original bill and dismissing the cross-bills of the corporate and individual defendants. The decree of the court below is, therefore, reversed and a decree rendered here for the appellants, wherein the original bill of appellee is dismissed and the prayer of the cross-bills of the corporate and individual defendants granted.

Reversed and decree here for appellants.

PER CURIAM.

The above opinion is adopted as the opinion of the Court and for the reasons therein indicated, the judgment of the court below is reversed and decree rendered here for appellants in accordance with the foregoing opinion.