CRUM *v.* DEPENDENTS OF REED

No. 41712 May 1, 1961 129 So. 2d 375

*J. T. Drake, Jr.,* Port Gibson, for appellant.

*Laub, Adams, Forman & Truly,* Natchez, for appellees.

McGEHEE, C. J.

The precise question involved on this appeal is whether or not the subsequent discharge in bankruptcy of an employer will bar the claim of the dependents of a deceased employee against the bankrupt employer under the Mississippi Workmen's Compensation Act of 1948, as amended, where such claim was listed as a debt due in the bankruptcy proceedings, and where no formal award had been made, but the statute itself requires the employer to make voluntary payments of compensation, if the claim is not controverted. So far as we are advised by the briefs of opposing counsel or by our own investigation of the point at issue, neither this Court not any other court has decided this exact question.

The employee Samuel Reed, the husband of Dora Reed and the father of their minor children all under

eighteen years of age, Levorn Reed, Ike Reed, Rosie Lee Reed, Lula Mae Reed and Joyce Reed, was on the date of his death on August 16, 1957, an employee of the appellant B. C. Crum who was engaged in the timber and lumber business and had in his employ eight or more persons. The appellant did not carry workmen's compensation insurance and he did not qualify as a self-insurer. The foregoing facts are stipulated, and it was also stipulated that the employee Samuel Reed suffered an accidental death arising out of, and in the course of, his employment with B. C. Crum, on August 16, 1957, and that the said Samuel Reed was at that time earning an average weekly wage of $50; and that the claimants hereinbefore named were the dependent widow and the dependent children of the said employee; that no compensation payments for death benefits of any type have been paid either to the claimants or for their benefit; and that the employer B. C. Crum filed a voluntary petition in bankruptcy in the U. S. District Court for the Southern District of Mississippi, Vicksburg Divison, on November 19, 1957, and was adjudicated a bankrupt on that same day.

The record discloses that this proceeding before the Mississippi Workmen's Compensation Commission was not instituted until February 1959; that subsequently on a hearing before the attorney referee an award was made in favor of the complainants for the full death benefits provided by law; that a like result was reached on an appeal to the entire Commission; and that thereafter on appeal by the employer B. C. Crum to the Circuit Court of Jefferson County, Mississippi, the order of the attorney-referee and the award by the full Commission was affirmed, and the employer appeals.

The attorney-referee in his opinion rendered on September 14, 1959, found as a fact that the death of Samuel Reed occurred on August 16, 1957, and that B. C. Crum was adjudicated a bankrupt on November 19, 1957, and

that he had been finally discharged in bankruptcy prior to the opinion of the attorney-referee. These facts were also stipulated in the record on May 11, 1959, at the hearing on that date.

The proceeding before the Mississippi Workmen's Compensation Commission seeks to impose a personal liability against the appellant B. C. Crum on the ground that the claim, although listed by the bankrupt as one of his debts in the bankruptcy proceeding, was not a provable debt under the Act in Bankruptcy, U. S. C. A., Title 11, Section 103, which lists as provable debts "* * * (4) an open account, or a contract express or implied; (5) provable debts reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for a discharge, less costs incurred and interest accrued after the filing of the petition and up to the time of the entry of such judgments; (6) an award of an industrial-accident commission, body, or officer of any State having jurisdiction to make awards of workmen's compensation in case of injury or death from injury, if such injury occurred prior to adjudication; (7) * * * (8) * * * (9) * * *".

Section 35, Title 11, U. S. C. A., provides in part, as follows: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except * * *," then follows a list of several nondischargeable debts which does not include a claim of the sort involved in the instant case.

The appellees contend that in order for this claim to be provable in bankruptcy the same must have been first reduced to an award by the Mississippi Workmen's Compensation Commisison. In the case of Maynard v. Elliott, 283 U. S. 273, 51 S. Ct. 390, 75 L. Ed. 1028, the Supreme Court of the United States stated the general policy which requires a liberal construction of the Bankruptcy Act so as to give the bankrupt the right to rid himself of his indebtednesses and to start anew in busi-

ness when the Court stated in that opinion the following: "Possible doubts as to the meaning of the section (and by which the Court was referring to the section defining provable debts) should be resolved in the light of the purpose of the act 'to convert the assets of the bankrupt into cash for distribution among creditors and then to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.' " Remington on Bankruptcy (Henderson Revision, 1956), Vol. II, Section 759, states in part, as follows: "Section 63(a) of the Bankruptcy Act lists the kinds of debts that may be proved and allowed. * * * The statute is to be liberally construed in favor of the provability of claims * * * Summarizing, the general concept is that anything commonly understood as a 'debt' or monetary obligation of the bankrupt is provable. * * *" Cf. Remington on Bankruptcy (Henderson Revision, 1956), Vol. II, Sections 814 and 854.

Since there was no dispute of the fact that Samuel Reed met an accidental death in the course of, and arising out of, his employment, and as to the amount of his average weekly wage at the time of his death, and as to whom is dependents were, it would have been a vain requirement to impose upon the employer the necessity of controverting the claim and denying that it was compensable under the Mississippi Workmen's Compensation Act. In other words, the appellees would require that he controvert the claim and deny its compensability under the procedure provided for by the Mississippi Workmen's Compensation Law in order for such employer to have the same probated against his estate in bankruptcy as a claim that was in fact compensable.

In the case of H. C. Moody & Sons v. Dedeaux, 223 Miss. 832, 79 So. 2d 225, it was said: "If a formal hearing by the Commission is necessary in order to conclude every case involving voluntary payments, then the sys-

tem of voluntary payments established by the statute would be seriously encumbered and handicapped. In the last five years there have been 158,687 claims processed through the Commission, but there. have been only 1, 214 controverted claims. During the same period there have been 157,473 uncontroverted claims, of which 35,-997 have been closed by final payment. We do not think that it was the legislative intent to require that there be a formal hearing by the Commission in order to close each of these and other voluntary payment cases. In fact, the express terms of the statute as discussed above indicate the contrary.''

In other words, a great majority of the claims by laborers or their dependents against their employers are paid without being controverted. To controvert a claim is to deny that the same is compensable, whereas, in the instant case the employer had no defense against the claim and recognized his liability for compensation by listing the same in the schedule of his debts in the bankruptcy proceedings during the same year in which the employee met his death. Section 6998-23, Code of 1942, Recompiled, reads as follows: ''Any person entitled to compensation under the provisions of this act shall have lien against the assets of the carrier or employer for such compensation without limit of amount, and shall, upon insolvency, bankruptcy, or reorganization in bankruptcy proceedings of the carrier or employer, or both, be entitled to preference and priority in the distribution of the assets of such carrier or employer, or both.''

 █ It is possible for the assets of a bankrupt to be sufficient to pay in full all of the preference claims and consequently the bankrupt would be relieved in full of such obligations. We do not think that the Congress intended that in order for an employer to get the benefit of the provisions of the Bankruptcy Act he must controvert every claim that he admittedly owes, since the award is automatic where the claim is not controverted.

See 82 C. J. S. 560, Section 321; State Board of Education v. Mobile & Ohio Railroad Company, 72 Miss. 236, 16 So. 489; Thornhill v. Ford, 213 Miss. 49, 56 So. 2d 23; Beard v. Stanley, 205 Miss. 723, 39 So. 2d 317.

Section 6998-19, Code of 1942, Recompiled, as amended, reads in part as follows: "(a) Compensation under this act shall be paid periodically, promptly, in the usual manner, and directly to the person entitled thereto, *without an award,* except where liability to pay compensation is controverted by the employer." (Italics ours.)

 In other words, it seems that the statute itself makes the award in all cases, except where the obligation to pay is controverted. Thousands and thousands of claims by laborers or their dependents are paid automatically upon the happening of an event calling for payment under the act, without a formal proceeding, hearing, or formal award, before the Workmen's Compensation Commission, except in cases where the claims are controverted. We do not think that the Congress intended to give an advantage to an employer who controverts liability on a claim to the point of having an award made by the Commisison, and where he has no defense thereto, over the thousands and thousands of other employers who recognized their liability for compensation where the accidental injury admittedly arises out of, and in the course of, the employment. We think that the Congress intended to place an award by an industrial commission on the same footing as a judgment, and that it was not the purpose and intention of the act to require an employer to controvert a claim to the point of having a formal award made on the merits thereof before he could receive the benefits of the Bankruptcy Act by being relieved of further liability on his debts after his discharge in bankruptcy.

 The "award" of a workmen's compensation commission, referred to in Section 103 (6) outlining

provable debts in bankruptcy, includes the affirmative obligation of the employer to make voluntary payments, where the claim is not controverted. This is consonant with the congressional intent, and that of the Mississippi Legislature, and carries out the essential purpose of the Bankruptcy Act. ■■ ■ Hence appellees' claim was a provable debt, discharged by the order in bankruptcy.

From the foregoing views it follows that the cause should be reversed and a judgment rendered here in favor of the appellant.

Reversed and judgment here for the appellant.

*Kyle, Ethridge, Gillespie* and *Jones, JJ.,* concur.