# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CC-01758-SCT

*H. TED CAIN d/b/a HARRISON COUNTY NURSING FACILITY*

*v.*

*MISSISSIPPI STATE DEPARTMENT OF HEALTH AND LAKEVIEW CORPORATION d/b/a LAKEVIEW NURSING CENTER*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/23/1999 |
| TRIAL JUDGE: | HON. STUART ROBINSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | BARRY K. COCKRELL |
| | MICHAEL R. HESS |
| ATTORNEYS FOR APPELLEES: | EDMUND L. BRUNINI, JR. |
| | ROMAINE RICHARDS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 09/21/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/12/2000 |

**BEFORE PRATHER, C.J., SMITH AND DIAZ, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## STATEMENT OF THE FACTS AND CASE

¶1. On December 1, 1998, H. Ted Cain d/b/a Harrison County Nursing Facility ("Cain"), submitted an application with the Mississippi Department of Health ("the Department") for a Certificate of Need ("CON") to construct a forty-five bed nursing home facility in Harrison County. On January 19, 1999, Lakeview Corporation, d/b/a Lakeview Nursing Center ("Lakeview"), filed a competing application to add forty-five additional nursing home beds to its existing sixty-bed facility in Harrison County. The Legislature had specifically authorized the Department to issue a CON for additional nursing home beds in Harrison County. See Miss. Code Ann. § 41-7-191(2)(k).

¶2. On March 18, 1999, the Department issued an analysis finding that Lakeview was the more appropriate applicant to receive the CON authorized by statute. On May 26, 1999, a Hearing Officer submitted findings of fact and conclusions of law to the State Health Officer, Dr. Ed Thompson, recommending the approval of the Lakeview Application and the disapproval of the Cain Application. The State Health Officer agreed with this recommendation, and he issued orders on May 27, 1999, granting Lakeview's application for a CON and denying Cain's application for the same. On June 16, 1999, Cain appealed these rulings to the Chancery Court of the First Judicial District of Hinds County. On September

23, 1999, the Chancellor issued a memorandum opinion and order, affirming the rulings of the State Health Officer. Cain timely appealed this order to this Court.

## LAW

**I. Whether the Lakeview certificate of need application was applicable under Miss. Code Ann. § 41-7-191(2)(k( (Supp. 1999).**

¶3. The present appeal requires this Court to consider the Department's decision to award a CON authorizing 45 additional nursing home beds in Harrison County to Lakeview, rather than Cain. In the present appeal, this Court is not faced solely with arguments relating to whether the Department's ruling was consistent with the State Health Plan, as applied to the present case. Instead, this Court must also determine whether the Department's ruling awarding the CON to Lakeview was in conflict with the express dictate of statutes authorizing the awarding of a CON for additional nursing home beds in Harrison County.

¶4. The Legislature has enacted specific legislation relating to nursing home facilities in Harrison County on several occasions in recent years. On April 17, 1989, the Legislature passed Senate Bill 2295, which authorized the Department to issue a CON for 150 private pay nursing home beds in Harrison County, provided that none of the recipients participated in the Medicaid program. Specifically, this bill provided that:

> The Department may issue a Certificate of Need in Harrison County to provide skilled nursing home care for Alzheimer's disease patients and other patients not to exceed 150 beds, provided that the recipient of the Certificate of Need agrees in writing not to participate in the Medicaid program, 43-14-101, et seq. or admit and keep any patients in the healthcare facility who are participating in the Medicaid program.

Harold Armstrong, Director of the Department's Division of Health Planning and Resource Development, testified that the Department divided the 150 authorized beds among three competitors. Armstrong testified that sixty beds were awarded to Driftwood, Inc., the predecessor of Lakewood; forty-five beds were awarded to Biloxi Health Care Facility; and forty-five beds were awarded to The Care Center. Although three CONs were thus awarded, only two of the CON recipients - Driftwood, Inc. and The Care Center - actually built nursing facilities.

¶5. In 1994, the Legislature passed Senate Bill 2503, which amended the aforementioned statute to provide in pertinent part that:

> The Department may issue a Certificate of Need in Harrison County to provide skilled nursing home care for Alzheimer's disease patients not to exceed 150 beds, provided that the recipient of the Certificate of Need agrees in writing that no more than 20 of the beds in the healthcare facility will be certified for participation in the Medicaid program ...

Armstrong testified that the Department, recognizing that the Legislature had amended the statute with the knowledge that two facilities were operating in Harrison County, interpreted the statute as permitting both Lakeview and The Care Center to be eligible for 20 Medicaid beds *each*. This interpretation of the statute was not challenged by any party.

¶6. The statute was again amended in 1995 and is the version under which Lakeview submitted its CON

application in the present case. This 1995 statute authorized the Department, once again, to issue a CON, not to exceed 150 beds, provided that:

> (i) the owner of the health care facility issued a certificate of need for sixty (60) beds agrees in writing that no more than thirty (30) of the beds in the health care facility will be certified for participation in the Medicaid program (Section 43-13-101 et seq.), (ii) the owner of one (1) of the health care facilities issued a certificate of need for forty-five beds agrees in writing that no more than (23) of the beds in the health care facility will be certified for participation in the Medicaid program, and (iii) the owner of the other health care facility issued a certificate of need for forty-five beds agrees in writing that no more than twenty-two (22) of the beds in the health care facility will be certified for participation in the Medicaid program.

Miss. Code Ann. § 41-7-191(2)(k) (Supp. 1998).

¶7. Cain argues that, based on the language of the 1995 statute, the Department of Health had no discretion to award the CON to Lakewood, regardless of the merits of its petition. Cain argues that "the owner of the health care facility issued a certificate of need for sixty (60) beds" clearly refers to Lakewood, and Cain submits that it was the Legislature's intent that Lakewood be permitted to operate no more than thirty Medicaid-eligible beds. Cain argues that the Department abused its discretion in awarding Lakewood a CON to operate an additional forty-five beds (with twenty-two beds Medicaid eligible), and that the Department should have instead awarded the CON to him.

¶8. This Court concludes that the statute can be interpreted in at least two differing ways. One interpretation of the statute is that it was intended, as argued by Cain, to limit Lakeview, as "the owner of the health care facility issued a certificate of need for sixty (60) beds" to sixty beds total in Harrison County, only thirty of which were to be Medicaid-eligible. However, a more reasonable interpretation of the statute is that the Legislature was merely concerned with the number of Medicaid beds being put to use in Harrison County and that the Legislature did not intend to divest the Department of its discretion to determine which particular health care provider was eligible to be awarded the CONs to operate the beds in question.

¶9. The 1995 statute required that "the owner of the other health care facility issued a certificate of need for forty-five beds agree ... in writing that no more than twenty-two (22) of the beds in the health care facility will be certified for participation in the Medicaid program." Lakeview correctly notes that the statute does not refer to the "other owner of the other health care facility," nor does the statute contain any other language indicating that the Legislature was concerned whether one particular provider was awarded the CON in question. Harold Armstrong testified that, in his view, the language of the statute did not preclude Lakeview from being awarded the CON in the present case.[1] This Court agrees and concludes that the Department of Health had the discretion to award the CON to Lakeview.

¶10. The present appeal also raises the issue as to whether the Department erred in taking notice of an even more recent statute relating to Harrison County nursing facilities. In 1999, the Legislature enacted Miss. Code Ann. § 41-7-191, effective July 1, 1999, and this statute expressly provides that:

> (b)The department may issue certificates of need in Harrison County to provide skilled nursing home care for Alzheimer's Disease patients and other patients, not to exceed one hundred fifty (150) beds. From and after July 1, 1999, there shall be no prohibition or restrictions on participation in the Medicaid program (Section 43-13-101 et seq.) for the beds in the nursing facilities that were

authorized under this paragraph (b).

The Legislature has thus recently provided that the department may issue "certificates of need" in Harrison County, without direct or indirect references to specific providers who might have been awarded CONs in the past and without restrictions relating to Medicaid participation.

¶11. Cain does not dispute that the language of this statute would permit the awarding of a CON to Lakeview if it had been in effect at the time of the Health Officer's ruling. However, the Health Officer issued his ruling awarding the CON to Lakeview on May 27, 1999, and it is thus apparent that the aforementioned statute was not in effect until over a month subsequent to the Health Officer's ruling.

¶12. Lakeview submits that it would be unrealistic to expect the Department to completely ignore a statute which had already been enacted by the Legislature, at least as an evidence of legislative intent. Indeed, it is certainly arguable that the Department should have the right to take notice of the fact that the Legislature had enacted this statute at the time of the hearing. In the view of this Court, the Department does not necessarily apply a statute merely by taking note of the fact that a certain issue has been resolved by the Legislature in a certain manner and by using this resolution as an indication of legislative intent.

¶13. The language of the 1999 statute tends to contradict Cain's argument that the Legislature, in enacting the earlier statutes, was concerned with the awarding of CONs to specific providers. This Court has recognized that subsequent legislative enactments may serve as a valuable tool in determining the Legislature's intent in passing an earlier statute. This Court held in *State Tax Comm'n v. Overstreet Inv. Co.*, 194 So.2d 236, 238 (Miss.1967) that:

> The interpretation of a statute by the legislative department of the government may go far to remove doubt as to its meaning. This fact is recognized by the courts which regard it as proper, in determining the meaning of a statute, to take into consideration subsequent action of the legislature, or the interpretation which the legislature subsequently places upon the statute. ... Indeed, it has been held that if it can be gathered from a subsequent statute in pari materia what meaning the legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute.

¶14. The enactment of the 1999 statute strongly suggests that Lakeview's interpretation of the 1995 statute is the correct one. At the same time, the statute was not in effect at the time of the Health Officer's ruling, as all parties concede. At any rate, this Court need not make a determination on this issue, given that, as discussed *supra*, the Department of Health was not precluded from awarding a CON to Lakeview under the 1995 statute in effect at the time of the Health Officer's ruling. As such, the Health Officer had no need to resort to the 1999 statute in order to award the CON to Lakeview.

¶15. This Court thus concludes that the Department's decision to award the CON to Lakeview was not precluded by legislative enactment. As such, the present appeal should properly center around the merits of the respective proposals by Cain and Lakeview, considered under this Court's deferential standard of review on appeal.

> **II. Whether there was substantial evidence in the record that the Lakeview application was in substantial compliance with the applicable criteria and standards in the Mississippi State Health Plan, <u>The Mississippi Certificate of Need Review Manual</u> (Rev. 1997), and all**

**adopted rules, procedures and plans of the Mississippi State Department of Health.**

¶16. Having determined that the Department was not forbidden by statute from awarding the CON to Lakeview, the question next arises as to whether the Department's decision to award the CON to Lakeview was supported by law and by substantial evidence in the record. The Legislature has directed that the State Hearing Officer's order granting or denying a CON order be subject to judicial review, but that it shall not be vacated or set aside, either in whole or in part, except for errors of law, unless the Court finds that the order is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the Department, or violates any vested constitutional rights of any part involved in the appeal. Miss.Code Ann. § 41-7-201(4) (Supp.1990). *Mississippi State Dep't of Health v. Southwest Miss. Reg'l Med. Ctr.*, 580 So.2d 1238, 1239 (Miss.1991). This is nothing more than a statutory restatement of familiar limitations upon the scope of judicial review of administrative agency decisions. *Magnolia Hosp. v. Mississippi State Dep't of Health*, 559 So.2d 1042, 1044 (Miss.1990).

¶17. The arguments on the present issue are necessarily influenced by the fact that, as discussed *supra*, the Legislature has repeatedly enacted statutes expressly authorizing the construction of 150 nursing home beds for Alzheimer's disease patients in Harrison County. Indeed, Cain agrees with Lakeview that there is a need for additional nursing home beds for Alzheimer's patients, and Cain merely argues that the Health Officer should have granted him, rather than Lakeview, the CON to operate the facility.

¶18. Given that neither party questions the need for additional nursing home facilities in Harrison County, the issues in the present appeal are somewhat narrowed. Specifically, the relevant issue in the present appeal is whether there is substantial evidence in support of the State Health Officer's ruling awarding the CON to Lakeview rather than Cain. In making a determination in this regard, this Court should properly consider the general CON requirements as set forth in the State Health Plan in evaluating the competing proposals, but with a recognition of the deferential scope of review which this Court exercises on appeal of the Health Officer's ruling.

¶19. Cain argues that the Health Officer's ruling in awarding the CON to Lakeview was arbitrary and capricious, due in large part to Lakeview's alleged failure to respond adequately to the Department's General Review Criteria. In this regard, Cain argues that "perhaps the most significant General Review Criterion ignored by Lakeview was that of economic viability." Lakeview acknowledges that it did not present extensive evidence of its financial resources, but Lakeview notes that it provided financial statements for 1998 that, it submits, demonstrated that it was financially able to build and operate the proposed facility.

¶20. Lakeview also notes that it submitted financial statements for the three years that Driftwood, Inc., Lakeview's predecessor, had operated the facility. Lakeview notes that these statements indicate that, while the facility experienced a loss in 1995, it was profitable in 1996 and 1997. Furthermore, Brian Cain,[2] in his capacity as administrator of both Driftwood and its successor Lakeview, testified that no material changes in operations had occurred between the transfer from Driftwood to Lakeview. Brian Cain testified that he accordingly had no reason to believe that the Lakeview project would not be financially viable.

¶21. Brian Cain's assertions in this regard were disputed by Richard Lefoldt, who testified on behalf of Ted Cain that, in his view, the Lakeview project was based on an unrealistic projected charge structure. Lakeview notes, however, that Harold Armstrong testified that he felt that the information presented by

Lakeview was sufficient to establish the economic viability of the Lakeview project.

¶22. The strongest evidence in support of the Lakeview project was the evidence relating to cost containment. This Court has acknowledged that cost containment is a primary objective of the CON statutes and process. *St. Dominic-Jackson Mem'l Hosp. v. Mississippi State Dep't of Health*, 728 So.2d 81, 86 (Miss.1998). In this regard, Armstrong testified that cost containment considerations supported the awarding of the CON to Lakeview rather than Cain. Armstrong testified that the Lakeview application had the lower capital expenditures, lower construction costs, lower cost per patient per day, lower charge to patients, and would result in lower costs to Medicaid. Armstrong testified that the Lakeview proposal was more cost-effective, based in large part upon the fact that the proposed Lakeview project involved an addition to an existing facility as opposed to the construction of a new facility.

## CONCLUSION

¶23. While this Court agrees with Cain that Lakeview could have presented a more thorough and comprehensive application, we nevertheless conclude that the Health Officer's decision to award the CON to Lakeview was supported by substantial evidence in the record. A review of the testimony and evidence in the record supports the conclusion that the present case is largely one of competing testimony, and it is apparent that the Health Officer is in a better position than this Court to evaluate this evidence. The Health Officer's and Chancellor's rulings in awarding the CON to Lakeview are accordingly affirmed.

¶24. **AFFIRMED.**

>**PITTMAN AND BANKS, P.JJ., SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

>**McRAE, JUSTICE, DISSENTING:**

¶25. The result of today's majority opinion is a prime example of why this state should re-evaluate its procedure of requiring Certificates of Need ("CON"). Allowing only one or two hospitals under the CON regulations does not enhance the quality of care or lower costs, and it certainly does not foster competition. Instead, it grants monopoly power to facility owners, who then have no incentive to lower costs or improve service and allows them to charge whatever the "traffic can bear." There was sufficient evidence presented by both parties in this case to warrant both CONs. I would reverse the lower court's judgment and remand with instructions to award CONs to both parties. Accordingly, I dissent.

¶26. As outlined in the State Health Plan, the purpose of a CON is to: 1) improve the health of Mississippi residents; 2) increase the accessibility, acceptability, continuity, and quality of health services; 3) prevent unnecessary duplication of health resources; and 4) provide cost containment. State Certificate of Need Review Manual, ch. 1, p. 1.

¶27. Of these policies, the only one currently served by the CON laws is the prevention of duplicate services, which for the reasons discussed in this dissent may not be a benefit. In fact, Harold Armstrong, director of Health Planning and Resource Development for the Department of Health, testified that Harrison County's need for additional nursing home beds surpasses that of all other counties in Mississippi. The current State Health Plan projects a need for 1,071 beds for the year 2000 in that county. Table VI-4, State Health Plan at VI-24. However, only 846 beds are currently approved in Harrison County, creating a present shortfall of 225 nursing home beds.

¶28. This Court has acknowledged that cost control is a primary justification for the CON statutes. *[St. Dominic-Jackson Mem'l Hosp. v. Mississippi State Dep't of Health](#)*, 728 So.2d 81, 86 (Miss. 1998) (citing *Mississippi State Dep't of Health v. Mississippi Baptist Med. Ctr.*, 663 So.2d 563, 575 (Miss.1995)). In reality, the primary effect of CONs is anti-competitive. This frustrates the cost-saving purpose of the laws and in fact allows the "only game in town" to charge higher prices.

¶29. Allowing competition among the nursing home providers would very likely increase the quality of care and patients' access to it. In addition, opening the market to competition would force the providers to keep patients' costs low in order to remain competitive. Therefore, the purposes of CONs are best served by not requiring them at all.

¶30. The majority places much emphasis on the cost containment factor and holds this to be "the strongest evidence in support of the Lakeview project." Ironically, the path chosen by the majority is the one most likely to do violence to this concern. By granting a CON only to Lakeview, the majority has reduced the potential number of nursing home providers in Harrison County by one-third and has given Lakeview an uncontested two-thirds share of that market. As discussed above, this dynamic works contrary to the purposes of the CON statutes.

¶31. In construing ambiguous statutes, this Court has recognized that "[l]ogic and sound economic principles may serve as a guide to the legislative intent." *Thornhill v. Ford*, 213 Miss. 49, 65, 56 So.2d 23, 30 (1952)(citing 59 C.J.S., page 958). It defies both logic and sound economic principles to assert that granting monopoly power to nursing homes will promote cost savings to the state and to patients while increasing the quality and availability of care.

¶32. It also defies logic to hold that the Legislature intended to consolidate the nursing home industry in the hands of one or two facility owners. By doing so, the Legislature would be acting contrary to its own purpose. The current application of the CON laws serves to frustrate rather than promote the policy of ensuring readily available, high quality health care while minimizing the cost to patients and the state.

¶33. In the case at bar, there is conflicting evidence as to which nursing home facility would be the most cost effective to the state and to patients. Lakeview asserts and the majority agrees that construction costs were appropriately considered by the State Health Officer and the Department of Health in evaluating applications for Certificates of Need.

¶34. At trial, however, an expert in Medicaid reimbursements, Richard Lefoldt, testified that the Medicaid program does *not* consider the actual costs of construction when determining the amount to reimburse to providers. According to Lefoldt, Medicaid utilizes a standardized index, rather than the actual costs of construction, to calculate the amount of reimbursement per bed to be paid by the state. In other words, lowering construction costs will not benefit the state, nor will it necessarily benefit patients or anyone else except the owner of the facility. As a result, construction costs are irrelevant to the policies and purpose of the CON statutes.

¶35. For the foregoing reasons, the CON procedure functions to frustrate its own purpose, severely restricts competition, and should be abolished in this state. Both Lakeview and Harrison County Nursing Facility qualify under the General Review Criteria and should be granted CONs, particularly since additional nursing home beds are needed in Harrison County. This matter should be reversed and remanded

with instructions to grant both parties CONs since they both met the criteria and together they do not exceed the maximum bed requirement established.

¶36. Accordingly, I dissent.

1. Mr. Brunini (attorney for appellee): So the owner of the other facility does not mean it has to be a separate owner? It can be the owner of one facility and be the same as the owner of the other facility?

Armstrong (Director of the Department's Division of Health Planning and Resource Development): True.

2. Brian Cain should not be confused with Ted Cain, the appellant in the present case.