McRAE, Justice,
dissenting:
¶ 25. The result of today’s majority opinion is a prime example of why this state should re-evaluate its procedure of requiring Certificates of Need (“CON”). Allowing only one or two hospitals under the CON regulations does not enhance the quality of care or lower costs, and it certainly does not foster competition. Instead, it grants monopoly power to facility owners, who then have no incentive to lower costs or improve service and allows them to charge whatever the “traffic can bear.” There was sufficient evidence presented by both parties in this case to warrant both CONs. I would reverse the lower court’s judgment and remand with instructions to award CONs to both parties. Accordingly, I dissent.
¶ 26. As outlined in the State Health Plan, the purpose of a CON is to: 1) improve the health of Mississippi residents; 2) increase the accessibility, acceptability, continuity, and quality of health services; 3) prevent unnecessary duplication of health resources; and 4) provide cost containment. State Certificate of Need Review Manual, ch. 1, p. 1.
¶ 27. Of these policies, the only one currently served by the CON laws is the prevention of duplicate services, which for the reasons discussed in this dissent may not be a benefit. In fact, Harold Armstrong, director of Health Planning and Resource Development for the Department of Health, testified that Harrison County’s need for additional nursing home beds surpasses that of all other counties in Mississippi. The current State Health Plan projects a need for 1,071 beds for the year 2000 in that county. Table VI-4, State Health Plan at VI-24. However, only 846 beds are currently approved in Harrison County, creating a present shortfall of 225 nursing home beds.
¶ 28. This Court has acknowledged that cost control is a primary justification for the CON statutes. St. Dominic-Jackson Mem’l Hosp. v. Mississippi State Dep’t of Health, 728 So.2d 81, 86 (Miss.1998)(citing Mississippi State Dep’t of Health v. Mississippi Baptist Med. Ctr., 663 So.2d 563, 575 (Miss.1995)). In reality, the primary effect of CONs is anti-competitive. This frustrates the cost-saving purpose of the laws and in fact allows the “only game in town” to charge higher prices.
*214 ¶ 29. Allowing competition among the nursing home providers would very likely increase the quality of care and patients’ access to it. In addition, opening the market to competition would force the providers to keep patients’ costs low in order to remain competitive. Therefore, the purposes of CONs are best served by not requiring them at all.
¶ 30. The majority places much emphasis on the cost containment factor and holds this to be “the strongest evidence in support of the Lakeview project.” Ironically, the path chosen by the majority is the one most likely to do violence to this concern. By granting a CON only to Lakeview, the majority has reduced the potential number of nursing home providers in Harrison County by one-third and has given Lakeview an uncontested two-thirds share of that market. As discussed above, this dynamic works contrary to the purposes of the CON statutes.
¶ 31. In construing ambiguous statutes, this Court has recognized that “[ljogic and sound economic principles may serve as a guide to the legislative intent.” Thornhill v. Ford, 213 Miss. 49, 65, 56 So.2d 23, 30 (1952)(citing 59 C.J.S., page 958). It defies both logic and sound economic principles to assert that granting monopoly power to nursing homes will promote cost savings to the state and to patients while increasing the quality and availability of care.
¶ 32. It also defies logic to hold that the Legislature intended to consolidate the nursing home industry in the hands of one or two facility owners. By doing so, the Legislature would be acting contrary to its own purpose. The current application of the CON laws serves to frustrate rather than promote the policy of ensuring readily available, high quality health care while minimizing the cost to patients and the state.
■ ¶ 33. In the case at bar, there is conflicting evidence as to which nursing home facility would be the most cost effective to the state and to patients. Lakeview asserts and the majority agrees that construction costs were appropriately considered by the State Health Officer and the Department of Health in evaluating applications for Certificates of Need.
¶ 34. At trial, however, an expert in Medicaid reimbursements, Richard Le-foldt, testified that the Medicaid program does not consider the actual costs of construction when determining the amount to reimburse to providers. According to Lefoldt, Medicaid utilizes a standardized index, rather than the actual costs of construction, to calculate the amount of reimbursement per bed to be paid by the state. In other words, lowering construction costs will not benefit the state, nor will it necessarily benefit patients or anyone else except the owner of the facility. As a result, construction costs are irrelevant to the policies and purpose of the CON statutes.
¶ 35. For the foregoing reasons, the CON procedure functions to frustrate its own purpose, severely restricts competition, and should be abolished in this state. Both Lakeview and Harrison County Nursing Facility qualify under the General Review Criteria and should be granted CONs, particularly since additional nursing home beds are needed in Harrison County. This matter should be reversed and remanded with instructions to grant both parties CONs since they both met the criteria and together they do not exceed the maximum bed requirement established.
¶ 36. Accordingly, I dissent.